# Wytheville

BERNARD W. JAMES, ADMINISTRATOR OF THE ESTATE OF
MAUDE MONCURE FORD, DECEASED v. A. W.
MAYNARD AND W. S. BELL.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Charles W. Crowder,* for the appellant.

*Alfred E. Cohen* and *David Meade White,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal brings under review a decree disallowing a claim filed by the estate of Maude Moncure Ford, deceased, against the estate of Edgar Lee Ford, deceased, her husband.

Edgar Lee Ford died testate on June 6, 1931, seized and possessed of considerable real and personal property. He was survived by his wife, Maude Moncure Ford.

Due to the uncertain and ambiguous language of his will a suit was instituted for its interpretation and construction. It is not here necessary to go into that proceeding other than to say that the court held that the "paramount intent" of the testator was "to make the fullest and most complete provision of which he was capable for his wife during her life or until her re-marriage," that under the will she "took an estate for her life or until her re-marriage in all the property of which the testator died, seized and possessed, with authority to sell any or all of the real estate in order to provide for her own support, maintenance and welfare;" and that after the death of the wife and the payment of certain legacies the fee-simple title to the real estate became vested in the remainderman, Leonard B. Ford, the testator's brother. From the decree construing the will an appeal was denied by this court, and hence that proceeding has been terminated and is not here involved.

At the time of the death of Edgar Lee Ford, his widow was an invalid. In fact, she survived her husband by less than a year and died on April 29, 1932.

A. W. Maynard and W. S. Bell qualified as administrators with the will annexed of the husband's estate. Immediately the question of the care and maintenance of the widow became acute. Her state of health required heavy expenditures for nursing and medical attendance as well as for the ordinary necessities of life. It was questionable whether the income from her husband's estate, after deducting the necessary expenses of adminis-

tration and repairs to the buildings, would be sufficient to provide for her maintenance and support. It seemed necessary that some part of the real estate be sold for this purpose, and the subject was discussed by the administrators, the relatives of the widow and the remainderman.

The widow's relatives claim that both the administrators and the remainderman agreed that Mrs. Ford's personal funds, derived from certain insurance which her husband had left her, should be used for her maintenance and support and that she would be reimbursed by husband's estate for these advances. The making of such an agreement was denied by both the administrators and the remainderman.

But regardless of whether or not this agreement was made, the evidence shows that during the short time Mrs. Ford survived her husband, she spent for her maintenance and support $2,502.80 more than she received from the administrators.

As this deficit had not been collected during the widow's lifetime her personal representative filed a claim therefor against her husband's estate. After hearing the evidence the commissioner of accounts allowed the claim. On exceptions filed by the husband's administrators and by the remainderman, the trial court set aside the commissioner's ruling and disallowed the claim.

We think the action of the lower court in rejecting this claim was erroneous.

We have seen that the testator's "paramount intent" was "to make the fullest and most complete provision of which he was capable for his wife during her life." The whole estate—both real and personal property, both principal and interest—was charged with this trust. And to insure the carrying out of that purpose the will provided that the administrators were authorized "to sell any or all of the real estate." And such was the testator's wish although he knew that the wife would have property of her own, for her separate estate consisted of the insurance which he had provided for her.

No question is raised as to the correctness of the amount or the items which were spent for the widow's support and maintenance. If these expenses had not been paid by her, if the bills had been presented by the nurses, the doctors or the grocery stores, would there have been any question as to their payment? We think not.

If, during her life, the widow had insisted that she be reimbursed for the bills paid by her, certainly no question would have been raised as to her demands. If she was entitled to reimbursement during her life for these advances, certainly her estate, after her death, has a valid claim therefor.

Furthermore, under the express terms of the will the widow had the right to insist upon a sale of the real estate, or some part thereof, for the payment of these expenses. The uncontradicted evidence shows that these advances were made out of her separate estate to avoid a sacrifice of her husband's real estate at a forced sale. This was with the implied if not the express consent of the remainderman. It hardly lies in his mouth now to say that she, instead of advancing the necessary funds out of her own estate, should have forced a sale of some part of the real estate to his detriment.

There is another circumstance favoring the allowance of this claim. The evidence shows that during the few months which the widow survived her husband, when she was an invalid and badly in need of funds for her proper care and maintenance, there was spent on repairs to the real estate approximately $2,600, or just about what is now due the widow's estate. It is strange, to say the least, that these heavy repairs should have been necessary immediately after the testator's death.

The repair bills were not paid by the administrators and did not come under the scrutiny of the commissioner of accounts. They were deducted by the rental agents from the gross rentals and the repairs were effected under the *supervision of the remainderman himself*. The result is that the value of the real estate, which will come into

his hands, has been enhanced by precisely the same amount in which the widow's separate estate has been diminished. We think it only equitable, then, that since the payment of the widow's expenses were postponed by these repairs, made by and for the benefit of the remainderman, his enjoyment of the estate should now be deferred until the widow's estate has been reimbursed for the advances made by her.

Our conclusion is that the decree appealed from should be reversed and the cause remanded for further proceedings to insure the payment of the claim of the widow's administrator.

*Reversed and remanded.*